FILED

Oct 18 2017, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Office of the Public Defender
Crown Point, IN

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, IN

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Katherine Shuwan Holmes, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | October 18, 2017 <br><br> Court of Appeals Case No. <br> 45A03-1705-CR-1155 <br><br> Appeal from the Lake Superior <br> Court, Criminal Division IV <br><br> The Honorable Samuel L. Cappas, <br> Judge <br><br> Trial Court Cause No. <br> 45G04-1607-F1-0006 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Katherine Shuwan Holmes was sentenced to an aggregate term of forty years for one count of Level 1 felony neglect of a dependent resulting in death and five counts of Level 6 felony neglect of a dependent. She now appeals, arguing that the trial court erred by not recognizing three mitigators and that her sentence is inappropriate. We affirm her sentence.

# Facts and Procedural History

[2] The facts, as taken mostly from the stipulated factual basis, show that Holmes is the mother of all six victims in this case. In 2016, Holmes, Jarod McMillan (the father of Holmes's three youngest children), Holmes's brother, and Holmes's six children lived in a one-bedroom apartment in Gary. On March 31, 2016, twenty-seven-year-old Holmes gave birth to K.M., the youngest of her six children. K.M. was 5 pounds, 5 ounces at birth. Holmes and K.M. were discharged from the hospital on April 2, with orders to follow-up with Dr. Hoess, a pediatrician, in 5-7 days. Holmes, however, did not take K.M. to the pediatrician as instructed. Instead, Holmes took K.M. to the pediatrician about two weeks later, on April 21. At the appointment, Dr. Hoess noted K.M.'s low weight and sent them home with specific feeding instructions. Dr. Hoess said that if K.M. did not gain any weight by the next day, she would admit him to the hospital. When Holmes and K.M. returned to the pediatrician the next day, K.M. had gained 4 ounces. Dr. Hoess told Holmes to continue feeding K.M. as

instructed and to return on April 26. Holmes, however, did not return for this appointment.

[3] Over two months later, on Friday, July 1, Holmes spoke with Dr. Hoess on the phone and said that K.M. was again not gaining any weight. Dr. Hoess told Holmes to bring K.M. to the clinic on Tuesday, July 5 and to take him to the emergency room if he had any problems in the meantime.

[4] Holmes did not take K.M. to the emergency room over the weekend, nor did she take him to the clinic on July 5. Instead, on July 5, Holmes and McMillan left their apartment around 10:00 a.m. and returned home around 4:30 p.m., at which point they found K.M. unresponsive. K.M. was taken by ambulance to the hospital, where he was pronounced dead at 5:37 p.m. K.M., who was three months old, weighed just 5.9 pounds. According to medical records, K.M. appeared to be neglected, he had no body fat, his groin and perineum were burned (mostly likely from urine), and he was covered in dirt. The cause of death was malnutrition and dehydration.

[5] In addition, the apartment in which Holmes, McMillan, Holmes's brother, and the six children lived was roach, flea, and bedbug infested, and there was garbage littered throughout it. There was not a single bed in the apartment. When DCS removed Holmes's other children a few days later, they "reeked of a foul odor and were all in need of baths." Appellant's App. Vol. II p. 53.

[6] The State charged Holmes with one count (Count I) of Level 1 felony neglect of a dependent resulting in death (K.M.) and seven counts (Counts II-VIII) of

Level 6 felony neglect of a dependent (two counts for K.M. and one count for each of the other five children). In March 2017, Holmes and the State entered into a plea agreement. *Id.* at 48. Holmes agreed to plead guilty to all of the charges. In addition, the parties agreed that they were "free to fully argue their respective positions as to the sentence to be imposed by the Court" and that the sentence for Count I would run concurrent to the sentences for Counts II-VIII. *Id.* at 49. The parties also stipulated to a factual basis. *Id.* at 50, 52-53. The court found that a factual basis existed and set the matter for sentencing.

[7] At the April 2017 sentencing hearing, the State admitted twenty-eight photographs into evidence. Some of the photographs depicted the condition of Holmes's apartment when the children were removed, but most of them showed K.M.'s body. *See* Exs. 16-28. In short, the photographs are "disturbing." Sent. Tr. p. 5. A homicide detective with the Lake County Sheriff's Department saw K.M. at the hospital and described the photographs at the hearing. For example, one of the photographs showed K.M.'s diaper, which had fungus growing in it. Other photographs showed fungus growing under K.M.'s armpits and dirt underneath his fingernails. The more disturbing photographs showed K.M.'s sunken and discolored stomach and his skin "removed all the way down to the muscle" in his groin and buttocks areas, including skin "missing from the edge of his phallic area." *Id.* at 30, 31. In addition, the detective said that he spoke with the pathologist, who said that K.M. likely died 12-16 hours before he was taken to the hospital "due to the

discoloration of his stomach noting that he had already begun to decay." *Id.* at 32.

[8] Holmes's aunt testified that Holmes grew up in "deplorable conditions" and compared the conditions Holmes grew up in to those of her apartment. *Id.* at 39. Holmes's aunt also testified that Holmes had completed schooling to be a certified nursing assistant (CNA); however, she had not received her license and was working two jobs—at "JJ Fish" and Rally's. *Id.* at 42, 52; Appellant's App. Vol. II p. 90 (PSI). Finally, Holmes testified as follows:

> This has been very hard. And I hate myself every day because of this. I love my kids with everything in me, despite of what happened. All six of them I love, because they are all I have in this world. Because I knew that they loved me. That's all I got. Now, I probably will never see them again.
>
> And I'm sorry. I thought I was trying my best and I know it was bad, but I was trying to make it better. This is not something I intentionally did. I didn't intentionally try to hurt my baby, because I loved him just as much as I loved my other kids. I just don't want to lose my relationship with . . . my other five kids. I don't want them to think that their momma just didn't care about them, because of what anybody might say. Because I love them to death. They're all I got in this world. And when nobody else cared, I know they loved me.

Sent. Tr. pp. 67-68.

[9] The trial court found the following aggravating circumstances:

1. The nature and the circumstances are such that the harm suffered by the victim in Count I was greater than necessary to prove the elements of the crime;

2. The State's photographic exhibits 25, 26 and 27 show the skin in the groin and buttocks area of the victim in Count I deteriorated to such a degree that the underlying tissue and muscle had been exposed, which the Court finds had to have developed over a significant period of time. The Court finds this demonstrates malicious and cruel behavior to ignore the child's condition and to fail to provide treatment;

3. The Court finds the State's photographic exhibits illustrate that the victim in Count I was emaciated to the point where he almost appeared mummified;

4. The Court finds that the victim in Count I in all likelihood suffered from lack of food and care on a daily basis such that for the three (3) months that he lived such treatment amounted to torture;

5. The defendant received training to be a certified nursing assistant and failed to apply her training to her children;

6. The Court finds the condition of the victim in Count I to be horrendous and appalling;

7. The defendant expressed little remorse.

Appellant's App. Vol. II pp. 64-65. The court found two mitigators: (1) Holmes had no criminal history and (2) she pled guilty. The trial court found that the aggravators "substantially" outweighed the mitigators. *Id.* at 65. The trial

court found that Counts II and VIII, both of which involved K.M., merged into Count I. The court then sentenced Holmes to forty years for Count I, with the final three years to be served on community corrections. The trial court sentenced Holmes to two and a half years for each of the remaining five counts (Counts III-VII). The court ordered these sentences to be served consecutive to each other but concurrent to Count I, for an aggregate term of forty years.

[10] Holmes now appeals.

# Discussion and Decision

[11] Holmes challenges her sentence. First, she contends that the trial court erred by not recognizing three mitigators. Second, she contends that her sentence for Count I is inappropriate.

# I. Mitigators

[12] Holmes contends that the trial court erred by not recognizing the following mitigators: (1) she was raised in deplorable conditions; (2) she was employed; and (3) she was remorseful. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal for an abuse of discretion. *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

[13] One way that a trial court may abuse its discretion is by not recognizing mitigators that are clearly supported by the record and advanced for consideration. *Id.* at 491. The defendant bears the burden of demonstrating that "the trial court failed to find or identify a mitigating factor by establishing that the mitigating evidence is both significant and clearly supported by the record." *McElfresh v. State*, 51 N.E.3d 103, 112 (Ind. 2016) (quotation omitted). Remand for resentencing may be the appropriate remedy "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer*, 868 N.E.2d at 491.

[14] Holmes first argues that the trial court abused its discretion by not recognizing as a mitigator that she was raised in deplorable conditions, conditions similar to those of her own apartment.[1] The court considered this fact but did not find it to be mitigating:

> [Defense counsel] points out—which I guess would be possibly a mitigating factor—and he exhibited through testimony that Ms. Holmes was raised in similar conditions. So the argument for that is that, that's what she's used to and that should be a mitigator. I guess I would say, being raised in those conditions might explain this situation, but it doesn't excuse or justify it. I mean, she's 28 years old. She's an adult. She was 2[7] when this

---

[1] To the extent Holmes also argues that the trial court should have recognized as a separate mitigator that she had a difficult childhood, she has failed to prove that the mitigating evidence is both significant and clearly supported by the record. *See* Appellant's App. Vol. II p. 88 (PSI providing that Holmes stated her "family life growing up was good" and that Holmes "denied being abused, molested, or neglected during her formative years.").

> took place. She had schooling for being a certified nursing assistant, which teaches you how to take care of people. She, apparently, did not transfer those skills to her own situation, so I don't find that as being a mitigating factor.

Sent. Tr. p. 69. We are satisfied with the trial court's explanation for rejecting as a mitigator that Holmes was raised in deplorable conditions. Accordingly, the trial court did not abuse its discretion.

[15] Holmes next argues that the trial court abused its discretion by not recognizing her employment as a mitigator because it demonstrated that she "was making efforts to provide for her children." Appellant's Br. p. 9. Although Holmes's aunt testified at the sentencing hearing that she was working two restaurant jobs, the PSI reveals that Holmes was working only one such job. That is, Holmes began working at Rally's in May 2016 and stopped working there in July 2016 when she was arrested. Appellant's App. Vol. II p. 90 (PSI); *see also* Appellant's Reply Br. p. 6 (Holmes citing to PSI as evidence of her work history). In any event, many people are gainfully employed; therefore, a defendant's employment is not necessarily a mitigating factor. *Newsome v. State*, 797 N.E.2d 293, 301 (Ind. Ct. App. 2003), *trans. denied*. We find that the trial court did not abuse its discretion by not recognizing as a mitigator that Holmes had been employed at Rally's for only a couple months at the time of K.M.'s death. This is especially so given defense counsel's concession at the sentencing hearing that the fact that Holmes was employed was "no excuse" for what happened. Sent. Tr. p. 62.

[16] Finally, Holmes argues that the trial court abused its discretion by not recognizing her remorse as a mitigator (and instead recognizing that she expressed little remorse as an aggravator). A trial court's determination of a defendant's remorse is similar to a determination of credibility. *Stout v. State*, 834 N.E.2d 707, 711 (Ind. Ct. App. 2005), *trans. denied*. As such, without evidence of some impermissible consideration by the trial court, we accept its determination as to remorse. *Id*. Here, at the conclusion of the sentencing hearing, the trial court made the following remarks:

> And I note, not that it matters at this point, you never said you were sorry. You said you loved your children and you didn't want to be away from them. I didn't ever hear you say the words "I am sorry." I don't know what that says. Frankly, your children would be better off without you mothering them, I'm sorry to say.

Sent. Tr. p. 75. While Holmes did say the words "I'm sorry," *id.* at 67, we are confident that the court would have imposed the same sentence even if it had found Holmes's remorse to be a mitigator. This is because the court's comments at the sentencing hearing and its sentencing order indicate that the nature and circumstances of the crime were by far its primary consideration in sentencing Holmes and that Holmes's remorse was secondary.

## II. Inappropriate Sentence

[17] Holmes next contends that her maximum sentence of forty years for Count I is inappropriate. *See* Ind. Code § 35-50-2-4(b). She asks us to reduce it to the advisory term of thirty years pursuant to Indiana Appellate Rule 7(B), which

provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Because we generally defer to the judgment of trial courts in sentencing matters, *Norris v. State*, 27 N.E.3d 333, 335-36 (Ind. Ct. App. 2015), defendants have the burden of persuading us that their sentences are inappropriate, *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Id.* (citing *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)).

[18]     Holmes concedes that the nature of the offense is "extremely serious." Appellant's Br. p. 11. As the trial court described this case:

> State's Exhibits 25, 26 and 27 depicted the groin and genital area and the buttocks of [K.M.] where the skin was peeled and burned back or deteriorated . . . to the point where the detective says the underlying tissue and muscle can be seen. There's nothing so horrendous and appalling to think that Ms. Holmes . . . could sit there and let a child waste away to this point. The photographs of the child almost look like he's—not to be disrespectful—but it almost look[s] like he's mummified. I mean, his bones were sticking out and his stomach sunken. It's terrible. The cases I have seen in here where people are charged with neglect is, you know, a kid gets beaten, his head banged and they don't take him to the doctor, you know, and he passes away through a cerebral hemorrhage. You know, it's like a one-time event. But to me, again, this was like a daily event over, basically, three months that there was a neglect of dependent charge here.

It's even a bigger slap in the face when you find out that she was training to be a CNA and how to care for people and didn't do that for her own children. She could have called 911 at any point. There are urgent care clinics all over this county, the emergency room. It should have been obvious that [K.M.] needed emergency medical care for a significant period of time. . . .

\* \* \* \* \*

Ma'am, it's just terrible, terrible circumstances. Every day there were warning signs that were looking you in the face, and you chose to ignore those . . . . It's not that you didn't know about it. Anyone who looks at those pictures, it's clearly obvious the emergency condition this child was in. As [the prosecutor] points out, you chose to ignore that. Fungus growing in the baby's diaper . . ., how long does that have to have sat there for that to happen? There was also blood in that baby's diaper. It's appalling. Appalling.

Sent. Tr. pp. 71-72, 74-75.

[19]    As for Holmes's character, she argues that she was raised in deplorable conditions, had no criminal history before this case, was employed "in an attempt to provide for her children," and "appeared to express sincere remorse at the time of her sentencing." Appellant's Br. p. 11. But even considering these things in Holmes's favor, they do not overcome the horrific nature of the offense in Count I, as relayed by the trial court and exhibited by the photographs in this case. Holmes has failed to persuade us that her forty-year sentence for Count I is inappropriate.

Affirmed.

Mathias, J., and Crone, J., concur.