

FILED

Jun 17 2019, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jack Kenney
Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nathaniel Hale,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 17, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2920<br><br>Appeal from the Hamilton<br>Superior Court<br><br>The Honorable Steven R. Nation,<br>Judge<br><br>Trial Court Cause No.<br>29D01-1703-F1-2048 |

**Najam, Judge.**

# Statement of the Case

Nathaniel Hale appeals his convictions for five counts of child molesting, as Level 1 felonies, following a jury trial.[1] Hale presents the following issues for our review:

> 1. Whether the State presented sufficient evidence to support his convictions.
>
> 2. Whether the trial court abused its discretion when it sentenced him.
>
> 3. Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

# Facts and Procedural History

In 2016, Hale became engaged to S.F. Hale moved into S.F.'s home, where she lived with her then-ten-year-old daughter, K.F. One night in September, Hale went into K.F.'s bedroom while she was sleeping. K.F. heard him enter, but she pretended to be asleep. Hale reached under the blanket on K.F.'s bed and put his hand inside K.F.'s pajama pants and underwear. Hale moved his hand and fingers "up and down or in circular motions" on her "private parts," which she later explained referred to her "vagina," and that it "hurt [K.F.] a lot." Tr. Vol. 2 at 207-08. This incident lasted approximately three to six minutes before

---

[1] Hale was also convicted of two counts of child molesting, as Level 4 felonies, but he does not appeal those convictions.

Hale left the bedroom. About a week later, Hale entered K.F.'s bedroom again while she was sleeping, and he used his fingers to go "up or down or [in] circular motions" on her vagina. *Id.* at 210.

[4] A week or so after that incident, Hale again entered K.F.'s bedroom while she was sleeping, and he touched her "on [her] private parts" under her underwear "doing the same motions" as before. *Id.* at 212. Hale also took K.F.'s hand and put her hand on his penis "and made [her] hand go up and down with his hand." *Id.* After approximately ten minutes, Hale left K.F.'s bedroom.

[5] One night, K.F. fell asleep on a couch in the living room. Hale sat down on the couch next to her and touched K.F.'s vagina under her clothing, and he put his hand on her hand and made her hand move up and down on his penis. While Hale was touching K.F., he asked her whether it felt good and whether she wanted to see his penis. K.F. pretended to be asleep, but she eventually got up and told Hale that she had to go to the bathroom. K.F.'s hands felt wet after touching Hale's penis, so she washed them.

[6] On another occasion in early January 2017, K.F. asked Hale to play a game, and the two were sitting on Hale's bed in his bedroom. K.F. was sitting with her legs crossed in front of her when Hale began moving his fingers up and down her leg. Hale eventually began touching K.F.'s "private parts on the outside of [her] pants," and K.F. got off of the bed to "get away from that." *Id.* at 218. They stopped playing the game, and K.F. sat down again on the bed. K.F. said she was tired, and she lay down on the bed. At that point, Hale put

his hands inside K.F.'s pants and touched her vagina with "up and down" and "circular" motions, and he made her touch his penis. *Id.* at 219. After several minutes, Hale left the bedroom, and K.F. fell asleep.

[7] One day or so later, when K.F. came home from school, S.F. told her that she and Hale were "taking a break" from their engagement and that Hale "had left" their house for an indefinite period of time. *Id.* at 220. K.F. felt like it "was a good time" to tell her mother about what Hale had done to her over the past several months. *Id.* After hearing about the molestations, S.F. contacted law enforcement, and S.F. and K.F. went to stay at K.F.'s grandparents' house. On January 11, K.F. met with a forensic interviewer to discuss the molestations.

[8] The State charged Hale with seven counts of child molesting, five as Level 1 felonies and two as Level 4 felonies. At trial, then-twelve-year-old K.F. described each of the molestations, and a portion of her videorecorded forensic interview was played for the jury. The jury found Hale guilty as charged. The trial court entered judgment of conviction accordingly and sentenced Hale to thirty years for each Level 1 felony conviction (Counts 1-5) and six years for each Level 4 felony conviction (Counts 6 and 7). And the court ordered as follows:

- Counts 1, 2, and 3 shall be served concurrently but consecutive[] to Counts 4 and 5, and to Counts 6 and 7.

- Counts 4 and 5 shall be served concurrently but consecutive[] to Counts 1 through 3, and to Counts 6 and 7.

- Counts 6 and 7 shall be served [concurrently but] consecutive[]
  to Counts 1 through 3, and to Counts 4 and 5.

Thus, the trial court imposed an aggregate term of sixty-six years. This appeal ensued.

# Discussion and Decision

## *Issue One: Sufficiency of the Evidence*

[9] When reviewing a claim of insufficient evidence to sustain a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Meehan v. State*, 7 N.E.3d 255, 257 (Ind. 2014).

> "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. [T]he evidence is sufficient if an inference may reasonably be drawn from it to support the verdict."

*Id.* (quoting *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007)). Further, it is well settled that the testimony of a sole child witness is sufficient to sustain a conviction for molestation. *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012).

[10] To prove the five counts of child molesting, as Level 1 felonies, as charged, the State was required to show that on five occasions Hale, who was at least

twenty-one years old, performed "other sexual conduct" with K.F., who was under the age of fourteen. Ind. Code § 35-42-4-3(a)(1) (2018). To prove "other sexual conduct" as charged here, the State was required to show that Hale used his hand or finger to penetrate the sex organ of K.F. I.C. § 35-31.5-2-221.5. Our Supreme Court recently held that "proof of the slightest penetration of the sex organ, *including penetration of the external genitalia*, is sufficient to demonstrate a person performed other sexual []conduct with a child." *Boggs v. State*, 104 N.E.3d 1287, 1289 (Ind. 2018) (emphasis added).

[11] Hale contends that the State presented insufficient evidence to prove that his hand or finger penetrated the sex organ of K.F. In particular, Hale maintains that the evidence is insufficient to show penetration because: K.F., who was twelve years old at the time of trial, "had the capability of describing any penetration by Hale's fingers or hand if it had occurred, but she did not"; "the record is devoid of any medical or physical evidence of penetration"; and, while K.F. described pain after the molestations, she did not attribute that pain to penetration of her genitalia. Appellant's Br. at 18. Hale acknowledges that child witnesses are not required to give a detailed anatomical description of penetration, but he asserts that "K.F.'s vague and equivocal testimony here fell far short of meeting the element of penetration[.]" *Id.* at 19. We cannot agree.

[12] At trial, K.F. testified in relevant part as follows:

> Q: Okay. [During the first incident,] was [Hale's] hand inside your pants or inside your underwear, or both?

A: Both. It was inside both.

Q: Okay. And what did you feel?

A: I felt that [Hale's] hand was moving and like, almost like up and down or like circular motions.

Q: And where was it moving up and down or in circular motions?

A: My private parts.

* * *

Q: Is there another word that you use for your private parts?

A: Yes.

Q: What is that word?

A: Vagina.

Q: And when the hand was moving up and down or in a circle on your vagina, what did that feel like?

A: It hurt a lot.

* * *

Q: Okay. And that second time when [Hale] touch[ed] you on your vagina, what did you feel [him] touch you with?

A: A hand, like [his] fingers.

Q: Okay. And what were [his] hand or fingers doing that second time?

A:  It felt like they had been going up or down or circular motions.

Q:  And when that was happening, how did that feel that second time?

A:  It hurt still.

* * *

Q:  Okay.  And what happened that third time?

A:  It started out the same, and then he made me touch him.

* * *

Q:  And when he worked his way into your pants, where did he touch you that third time?

A:  On my private parts.

Q:  On your private parts.  And what was he touching you with on your private parts that third time?

A:  His hands.

Q:  And what was his hand doing?

A:  It was doing the same motions.

Q:  Okay.  And how did it feel that third time?

A:  It hurt still.

* * *

Q:  And what happened[ the fourth time]?

A: It was the same thing where he touched me and then made me touch him.

Q: Okay. Can you tell us about when he touched you that time on the couch?

A: It was the same feeling and it felt like the same movements as well.

Q: How was he touching you?

A: It was just his hands.

Q: And where was his hand touching you?

A: On my private part.

Q: And was it touching you on the outside of your clothes or the inside of your clothes?

A: The inside.

Q: And what was his hand doing when it was touching your private parts?

A: It was going again in the same motions as before.

Q: And how did that feel?

A: It hurt again.

* * *

Q: And what happened [the fifth time]?

A: And that time I had, he touched me and made me touch him.

Q: Okay. And how did he touch you?

A: It was in the same way where it felt like he was going up and down in a circular motion inside of my pants.

Q: And how did that feel?

A: It hurt again.

Q: Okay. And you said it felt like he was going up and down in a circular motion. Where was he touching you that time?

A: In my private parts.

Q: And what was he touching you with?

A: His hand.

Tr. Vol. 2 at 207-08, 210-12, 214-15, 218-19.

[13] At trial, the State also played for the jury a portion of K.F.'s forensic interview, which included the following:

Q: Okay. Okay. And when he's touching you on your vagina, tell me what is he touching you with?

A: His fingers.

Q: Fingers, okay. And tell me, are his fingers on top of the clothes or are they underneath the clothes?

A: Underneath.

Q: Underneath? Okay. And tell me are his fingers on the inside or the outside of your vagina?

A: Uh, I think—I don't know for sure, because I try to keep my eyes closed but I think, it feels like he's trying to find something.

\* \* \*

Q: Okay, thank you. And I heard you say that it hurts when he touches your vagina and you'll go to the bathroom afterwards and it hurts to use the restroom. And tell me, I heard you say he'll use his fingers, yeah. Tell me, does he use one finger or two fingers? Do you know?

A: Um, his whole hand will end up like down there but it will only end up being, it will be like one finger. So he'll just look like this but his whole hand is down there.

Q: Tell me what it feels like when he's using the one finger?

A: It either feels like he's going up and down or like in circles, and like pressing down really hard and it really hurts.

*Id.* at 239, 241.

[14] In sum, K.F. testified that, on five separate occasions, Hale touched her vagina with his finger or hand using an "up and down" or "circular" motion that felt like he was "trying to find something." *Id.* at 207, 239. While K.F. did not know whether Hale's finger had penetrated her *vagina*, again, penetration of the vaginal canal is not required to prove Level 1 felony child molesting as charged here. *Boggs*, 104 N.E.3d at 1289. The State need only have proven penetration of K.F.'s external genitalia. And it would have been physically impossible for Hale to touch any part of K.F.'s vagina without having first penetrated her

vulva, or external genitalia.[2] We conclude that a reasonable fact-finder could have determined from the evidence that Hale penetrated K.F.'s external genitalia, and we affirm his five convictions for child molesting, as Level 1 felonies.

### Issue Two: Abuse of Discretion in Sentencing

[15] Hale also contends that the trial court abused its discretion when it sentenced him. Sentencing decisions lie within the sound discretion of the trial court. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*.

[16] A trial court abuses its discretion in sentencing if it does any of the following:

> (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

---

[2] Stedman's Medical Dictionary defines "vagina" in relevant part as the genital canal in the female extending from the uterus to the vulva. Stedman's Medical Dictionary 1682 (25th ed. 1990). "Vulva" is defined in relevant part as the external genitalia of the female. *Id.* at 1730.

*Id.* (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490-491 (Ind.), *clarified on reh'g other grounds*, 875 N.E.2d 218 (Ind. 2007)).

[17]   The sentencing range for a Level 1 felony is twenty years to forty years, with an advisory sentence of thirty years. I.C. § 35-50-2-4. And the sentencing range for a Level 4 felony is two years to twelve years, with an advisory sentence of six years. I.C. § 35-50-2-5.5. Here, at sentencing, the trial court identified two aggravators: the number of molestations that occurred over the course of four months, and Hale's violation of his position of trust with K.F. And the court identified two mitigators: Hale's lack of a significant criminal history, and the hardship that Hale's incarceration would impose on his dependents. The court found that the aggravators outweighed the mitigators and imposed sentence as follows: thirty years for each Level 1 felony conviction and six years for each Level 4 felony conviction, with some of the sentences to run concurrently and others to run consecutively for a total aggregate sentence of sixty-six years executed.

[18]   Hale asserts that the trial court abused its discretion when it identified an improper aggravator and when it did not identify as mitigators his military service, disability, and employment history. We address each contention in turn.

[19]   Hale maintains that the trial court abused its discretion when it identified as an aggravator "the extended time over which the violation of the law occurred." Tr. Vol. 3 at 176. Hale asserts that that factor is improper "as a matter of law

because it covers exactly the offense[s] for which Hale stands convicted and it is not supported by the record." Appellant's Br. at 32. In particular, Hale states that each information charged him with child molesting that occurred between September 1, 2016, and January 7, 2017. Thus, he contends that the trial court relied on material elements of the offenses as an aggravator, which is prohibited. *See Gomillia v. State*, 13 N.E.3d 846, 852-53 (Ind. 2014).

[20] However, the State points out that, when Hale objected to this aggravator, the trial court clarified that its "comments were based upon the [number] of occurrences that happened during that period of time[.]" Tr. Vol. 3 at 178. And the State maintains that that aggravator was proper because a trial court may consider the particularized circumstances of the factual elements as aggravating factors. *See McElroy v. State*, 865 N.E.2d 584, 589-90 (Ind. 2007). We agree with the State. This court has previously held that a trial court properly found aggravating that the defendant had molested his daughter several times within one month. *Hart v. State*, 829 N.E.2d 541, 544 (Ind. Ct. App. 2005). The aggravator underscores the deliberate nature of Hale's crimes, which were not limited to a single incident but manifested a habitual pattern of conduct. The trial court did not abuse its discretion when it identified this aggravator.

[21] Hale also contends that the trial court abused its discretion when it did not find mitigating his military service, disability, and employment. The finding of mitigating circumstances is within the discretion of the trial court. *Rascoe v. State*, 736 N.E.2d 246, 248-49 (Ind. 2000). An allegation that the trial court

failed to identify or find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Id.* at 249. The trial court is not obligated to accept the defendant's contentions as to what constitutes a mitigating circumstance. *Id.*

[22] Hale emphasizes his "extensive" military service over the course of a decade, including tours in Iraq and Afghanistan, his physical and mental health issues related to his service, and his honorable discharge. Appellant's Br. at 35. However, military service is not necessarily a mitigating circumstance. *Harmon v. State*, 4 N.E.3d 209, 218 (Ind. Ct. App. 2014), *trans. denied*. Given the nature of Hale's crimes, which reflect conduct especially incompatible with that expected of a member of our military, we cannot say that the trial court abused its discretion when it declined to adopt this proffered mitigator.

[23] Finally, Hale asserts that his employment in the military and, since his discharge, as a personal trainer warrants mitigating weight. However, as this court has previously stated, "many people are gainfully employed," and "a defendant's employment is not necessarily a mitigating factor." *Holmes v. State*, 86 N.E.3d 394, 399 (Ind. Ct. App. 2017), *trans. denied*. We cannot say that the trial court abused its discretion when it declined to adopt this proffered mitigator. Hale has not demonstrated any abuse of discretion by the trial court in imposing sentence.

### *Issue Three: Inappropriateness of Sentence*

[24]     Finally, Hale asserts that his sixty-six-year aggregate sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." This Court has recently held that "[t]he advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). And the Indiana Supreme Court has explained that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. [*Anglemyer*, 868 N.E.2d at 494].

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[25]     Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224. The question is not whether another sentence is more appropriate, but rather

whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[26]　Hale concedes that his offenses "are serious and deserve punishment." Appellant's Br. at 27. But he maintains that his offenses "fall[] on the fringes of Indiana's Level 1 felony child molesting statute, which typically involves far more intrusive sexual abuse" and "a minimum concurrent sentence should have been imposed." *Id.* at 28. However, as the State points out, Hale, who had a position of trust with K.F., molested her on multiple occasions over the course of four months. He violated the safety of K.F.'s bedroom and molested her while she was trying to sleep. And K.F.'s statement at Hale's sentencing hearing clearly set out the myriad ways that the molestations have negatively impacted K.F.'s young life. We cannot say that Hale's sentence is inappropriate in light of the nature of the offenses.

[27]　Hale contends that his sentence is inappropriate in light of his character because he: "has led a significantly law-abiding life"; he is "in college and on track to graduate with honors"; his military service includes having received multiple medals and an honorable discharge; and he has maintained employment despite his partial disability. *Id.* at 28-29. However, Hale's criminal history, while relatively minor, does not reflect a good character. In 1999, when he was

about fifteen years old, Hale was adjudicated a delinquent for charges of possession of marijuana and visiting a common nuisance. Hale's adult criminal history began in 2002 and consists of eight misdemeanor convictions, including convictions for resisting law enforcement and trespass, and he violated his probation twice. Finally, we agree with the State's assessment that the offenses "were not isolated incidents of poor decision-making; they were predatory acts by a man who intentionally abused a relationship of trust" with a ten-year-old girl. Appellee's Br. at 24. We cannot say that Hale's aggregate sentence of sixty-six years is inappropriate in light of the nature of the offenses and his character.

[28] Affirmed.

Baker, J., and Robb, J., concur.