# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 03 2020, 11:09 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Denise L. Turner
DTurner Legal LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Hayden Nix, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | June 3, 2020 <br><br> Court of Appeals Case No. <br> 19A-CR-2300 <br><br> Appeal from the Hancock Circuit Court <br><br> The Honorable Cody B. Coombs, Commissioner <br><br> Trial Court Cause No. <br> 30C01-1712-F3-2637 |

**Brown, Judge.**

[1] Hayden Nix appeals his convictions for sexual misconduct with a minor as level 5 felonies. He asserts the evidence is insufficient to sustain his convictions and his sentence is inappropriate.

*Facts and Procedural History*

[2] At some point, Nix, who was born on September 2, 1998, and E.L., who was born on February 24, 2003, were at a party. Nix asked her what grade she was in, E.L. said she was a freshman, and Nix said: "dang you guys are young." Transcript Volume III at 44. Nix told E.L. that he was seventeen, but she later learned that was incorrect.

[3] On October 19, 2017, Nix left a party with three other males and picked up E.L. around 4:00 a.m. E.L. thought Nix was taking her to a party. Nix dropped off two of the males and said there was no reason to go to the party. The other male suggested going to "this place where there were hay bales," and Nix drove them to "an area that you could park the car for farmers or electricians" near New Palestine. *Id.* at 19, 21.

[4] Nix kissed E.L. and began "feeling [her] up." *Id.* at 21. At some point Nix moved from the driver's seat to the passenger side with E.L. and positioned himself on top of her. He pulled down her pants and underwear, touched her vagina with his hand, "finger[ed]" her, and "then it felt like – like somebody had taken their elbow" and was "sticking it into [her] vagina because it was very painful." *Id.* at 21-22. E.L. felt like it was an elbow because it "was so like large and it just had felt like" her vagina was being pushed open. *Id.* at 29. Nix

held on to her hips, his legs were straight, and he "was thrusting in and out" of her "vagina." *Id.* at 31, 45. E.L. realized what was happening, did not know what to do, and "was just frozen." *Id.* at 30. During this time, the other male was intoxicated and unconscious in the backseat.

[5] After Nix stopped, E.L. pulled up her pants, and Nix asked her if she enjoyed it and showed her a clip from Family Guy on his phone for probably five minutes. E.L. was "really shocked" and thought she was going to vomit. *Id.* at 33. Nix drove E.L. home, and she felt disgusting and dirty, took a shower, washed all of her clothes, and went to bed.

[6] In the following days, E.L.'s vagina was painful sometimes when she would walk or sit down. That weekend, E.L. told her sister she was raped, said that she did not want her to tell anybody, and asked her to keep it secret. On November 15, 2017, E.L.'s sister told E.L. she needed to tell her parents, and E.L. did so. That same day, E.L.'s father called the police.

[7] On December 21, 2017, the State charged Nix with Count I, rape as a level 3 felony, Count II, sexual misconduct with a minor as a level 5 felony alleging "sexual intercourse," and Count III, sexual misconduct with a minor as a level 5 felony alleging "other sexual conduct." Appellant's Appendix Volume II at 20.

[8] At trial, E.L. testified to the foregoing. The jury found Nix not guilty of Count I, rape as a level 3 felony, and guilty of the two counts of sexual misconduct with a minor as level 5 felonies under Counts II and III. At the sentencing

hearing, E.L. and her mother testified regarding the impact of the offenses. The court stated:

> Mr. Nix has a – a significant criminal history and it's not just a significant criminal history you're a 21 year old male this offense occurred when you were it looks like you were just over 18 years old and it is a significant criminal history in sexual behavior and I think the Presentence Investigation Report is correct is that you exhibit a lot of predatory behaviors. Specifically sexual predatory behaviors. Um the Court will also find a aggravating factor uh that Mr. Nix has violation the conditions of . . . his bond in another matter.

Transcript Volume IV at 5. The court found no mitigating factors. It also stated: "[A]s a sexual predator you are a danger to the Community and your attorney asks what – what does a significant sentence do? What it does is it protects the Community . . . ." *Id.* at 6. The court sentenced Nix to four years for Count II and three years for Count III and ordered the sentences to be served consecutively for an aggregate sentence of seven years. The court ordered the sentences to run consecutive to cause numbers 30D01-1712-F3-2636 ("Cause No. 2636") and 30C01-1709-F5-1943 ("Cause No. 1943").

*Discussion*

I.

[9] The first issue is whether the evidence is sufficient to sustain Nix's convictions. Nix contends the evidence is insufficient to sustain his conviction under Count II because the State failed to present evidence that he penetrated E.L.'s vagina with his penis, and as to his conviction under Count III, the evidence is

insufficient because E.L. testified that he did not insert his fingers into her vagina and the State presented no medical evidence to demonstrate penetration.

[10] When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

[11] The offense of sexual misconduct with a minor is governed by Ind. Code § 35-42-4-9, which at the time of the offenses provided that "[a] person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) commits sexual misconduct with a minor, a Level 5 felony." (Subsequently amended by Pub. L. No. 144-2018, § 28 (eff. July 1, 2018); Pub. L. No. 40-2019, § 13 (eff. July 1, 2019)). Ind. Code § 35-31.5-2-302 defines "[s]exual intercourse" as "an act that includes any penetration of the female sex organ by the male sex organ." Ind. Code § 35-31.5-2-221.5 defines "[o]ther sexual conduct" as "an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." A finger can be considered an object for purposes of the statute. *See Seal v. State*, 105 N.E.3d 201, 209 (Ind. Ct. App. 2018) (citing Ind. Code § 35-31.5-2-221.5 and

observing that case law has established that a finger is an object for purposes of the child molesting statute), *trans. denied.*

[12] The charging information for Count II alleged that Nix, "being at least 18 years of age, did perform sexual intercourse with E.L., a child at least fourteen (14) years of age but less than sixteen (16) years of age . . . ." Appellant's Appendix Volume II at 20. The charging information for Count III alleged that Nix, "being at least 18 years of age, did perform other sexual conduct as defined by I.C. 35-31.5-221.5, with E.L. a child at least fourteen (14) years of age but less than sixteen (16) years of age . . . ." *Id.*

[13] In *Boggs v. State*, 104 N.E.3d 1287, 1288 (Ind. 2018), the Indiana Supreme Court provided guidance on the meaning of "penetration" for purposes of "other sexual misconduct." The Court held that "[p]recedent makes clear that proof of the 'slightest penetration' of the female sex organ, including penetration of the external genitalia, is sufficient to sustain a conviction for child molestation based on sexual intercourse." 104 N.E.3d at 1288 (citing *Spurlock v. State*, 675 N.E.2d 312, 315 (Ind. 1996), *on reh'g* (1997); *Dinger v. State*, 540 N.E.2d 39, 40 (Ind. 1989)). The Court further held that "proof of the slightest penetration of the sex organ, including penetration of the external genitalia, is sufficient to demonstrate a person performed other sexual misconduct with a child." *Id.* at 1289. The Court has also held "[t]he fact-finder may infer penetration from circumstantial evidence such as the physical condition of the victim soon after the incident." *Allbritten v. State*, 262 Ind. 452, 453, 317 N.E.2d 854, 855 (1974).

[14] With respect to Count III related to other sexual conduct, E.L. testified that Nix pulled down her pants and underwear, was feeling her up, and fingering her. When asked if she recalled whether any portion of Nix's hand went into her vagina, she answered: "No I do not." *Id.* at 28. However, she also testified that Nix touched her under her clothing and that "[h]is hand was touching my vagina." *Id.* at 28. When asked to describe her use of the word "fingering," she stated: "He like he had stuck his hand or his fingers or just not inside of me but just on or like rubbing it or something." *Id.* at 29.

[15] Based on the record and E.L.'s testimony, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have found that Nix committed sexual misconduct with a minor as charged under Count III. *See Hale v. State*, 128 N.E.3d 456, 463 (Ind. Ct. App. 2019) ("While K.F. did not know whether Hale's finger had penetrated her vagina, again, penetration of the vaginal canal is not required to prove Level 1 felony child molesting as charged here. The State need only have proven penetration of K.F.'s external genitalia. And it would have been physically impossible for Hale to touch any part of K.F.'s vagina without having first penetrated her vulva, or external genitalia."), (citation omitted), *trans. denied*; *Morales v. State*, 19 N.E.3d 292, 297-298 (Ind. Ct. App. 2014) (rejecting the defendant's argument that penetration of the female external genitalia does not constitute penetration of the female sex organ), *trans. denied*.

[16] As to Count II related to sexual intercourse, E.L. testified that Nix pulled down her pants and "it felt like – like somebody had taken their elbow" and was

"sticking it into [her] vagina because it was very painful." Transcript Volume III at 21. The following exchange then occurred during direct examination:

Q . . . After that happened you told us a little while ago about an excruciating pain. Initially what you started to describe it as an elbow tell me why you described it that way?

A Because it was like I just thought of that because it was so like large and it just had felt like it was being like pushed open I guess.

Q Okay. What was being pushed open?

A My vagina.

Q Okay. How did that feel?

A It was very painful.

*Id.* at 29. E.L. also testified that as she realized what was happening she did not know what to do and she "was just frozen." *Id.* at 30. When asked what Nix was doing when she realized what was happening, she answered: "He was holding on to my hips and his legs were straight." *Id.* She stated that "[h]e was thrusting in and out" of her "vagina." *Id.* at 31, 45. She also testified that her vagina was painful sometimes when she would walk or sit down in the following days. On redirect examination, the prosecutor asked her if she thought Nix had "literally put his elbow in [her] vagina," and she answered in the negative. *Id.* at 87. When asked what she meant by saying it felt like an elbow, she said: "Like (inaudible) it felt like it but it wasn't his elbow." *Id.*

[17] We conclude the State presented evidence of a probative nature from which a reasonable trier of fact could have found that Nix committed sexual misconduct with a minor as charged under Count II.

## II.

[18] The next issue is whether Nix's sentence is inappropriate in light of the nature of the offenses and his character. Nix argues that the jury found him not guilty of rape and the fact that he and E.L. were close in age mitigates the nature of the offense significantly. He asserts that the imposition of consecutive sentences resulting in the maximum sentence allowed was inappropriate in light of the absence of any physical injury. With respect to his character, he argues he had no adult criminal history at the time of the offense and was not a hardened character. He also argues the trial court should have ordered his sentences to run concurrent with each other and concurrent with the sentence under Cause No. 2636.[1]

[19] Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade

---

[1] To the extent Nix cites Article 1, Section 18, of the Indiana Constitution, which provides that "[t]he penal code shall be founded on the principles of reformation, and not of vindictive justice," we observe that the Indiana Supreme Court has held that "particularized, individual applications are not reviewable under Article 1, Section 18 because Section 18 applies to the penal code as a whole and does not protect fact-specific challenges." *Ratliff v. Cohn*, 693 N.E.2d 530, 542 (Ind. 1998), *reh'g denied*.

the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[20] Ind. Code § 35-50-2-6 provides that a person who commits a level 5 felony shall be imprisoned for a fixed term between one and six years, with the advisory sentence being three years.

[21] Our review of the nature of the offense reveals that Nix, who was nineteen years old, picked up E.L., who was fourteen years old, at 4:00 a.m., drove her to an area other than the party which E.L. had originally thought they were attending, pulled down her pants and underwear, positioned himself on top of her, touched her vagina with his hand, and then held her hips and thrusted in and out of her vagina while she felt like her vagina was being pushed open by something large. After Nix dropped her at home, E.L. felt disgusting and dirty and her vagina was painful sometimes when she would walk or sit down. At the sentencing hearing, E.L. testified: "I was in a very dark place for quite a while after everything. Many times I tried to end my life because I didn't want to deal with anything." Transcript Volume III 222. E.L.'s mother stated that E.L.'s depression and anxiety intensified after the offenses. E.L.'s mother also stated that she obtained treatment for E.L. and "[t]he doctor said [E.L.] will always suffer from PTSD because of this horrific nightmare she endured . . . ." *Id.* at 229. The presentence investigation report ("PSI") states that E.L.'s parents reported that E.L. had become more reserved and less trusting of others.

[22] Our review of the character of the offender reveals that, as a juvenile, Nix was alleged to have committed sixteen counts in 2013 and he admitted in 2014 to two counts of sexual battery as class D felonies and two counts of battery as class B misdemeanors. In 2015, he admitted he violated probation. That same year, he admitted to being a delinquent child for child molesting as a level 3 felony and two counts of conversion as class A misdemeanors. In 2016, the court granted a motion to terminate filed by probation due to Nix incurring an out-of-state charge and Nix was unsuccessfully terminated from probation. The PSI states that he has one out-of-state arrest as a juvenile which occurred in Virginia and involved sexually maladaptive thinking/behavior, he was being supervised by Henry County Juvenile Probation on the Virginia case when he incurred his first adult case, and the final outcome of the Virginia case had been postponed pending the resolution of all Indiana cases. The PSI also indicates Nix received services while a juvenile including probation supervision with residential placement and homebased counseling, and that all services were sex offender specific treatment programs.

[23] As an adult, Nix was convicted of battery resulting in moderate bodily injury as a level 6 felony and domestic battery as a class A misdemeanor in 2019 under Cause No. 1943 related to offenses occurring in October 2017. In December 2017, the court granted a petition to revoke bond under Cause No. 1943 due to new offenses. He was convicted of three counts of sexual misconduct with a minor as level 5 felonies under Cause No. 2636. He was also charged with rape as a level 3 felony and sexual misconduct with a minor as a level 5 felony under

cause number 30D01-1901-F3-209, and the PSI indicates that the matter was pending.

[24] Nix reported he was regularly using alcohol and marijuana by age seventeen and used cocaine approximately four times and LSD approximately three times between ages eighteen and nineteen. The PSI indicates Nix was successfully discharged in November 2015 from placement at Resolute Treatment Center, a residential facility specializing in juvenile males experiencing sexually maladaptive thinking/behaviors. That same month, he returned to outpatient counseling. In November 2017, he was unsuccessfully terminated from sex offense specific treatment at Family Service Society, Inc., due to failure to fully cooperate with treatment. That same month, Nix began outpatient services through Sojourners Rest Counseling to address sexually maladaptive thinking/behaviors. The probation officer completing the PSI stated that Nix described himself as "impulsive and incapable of turning down any female (regardless of her age) that is interested in sexual contact." Appellant's Appendix Volume II at 43.

[25] The PSI further provides that Nix's overall risk assessment score using the Indiana Risk Assessment System places him in the moderate risk to reoffend category. The probation officer recommended consecutive sentences of four years for Count II and three years for Count III.

After due consideration, we conclude that Nix has not sustained his burden of establishing that his aggregate sentence of seven years is inappropriate in light of the nature of the offenses and his character.

For the foregoing reasons, we affirm Nix's convictions and sentence.

Affirmed.

Najam, J., and Kirsch, J., concur.