## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 22 2020, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenneth Moore,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

December 22, 2020

Court of Appeals Case No.
20A-CR-734

Appeal from the Elkhart Superior
Court

The Honorable Teresa L. Cataldo,
Judge

Trial Court Cause No.
20D03-1901-F1-1

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Kenneth Moore was found guilty of two counts of child molesting, a Level 1 felony and a Level 4 felony, and admitted to being a repeat sexual offender. The trial court sentenced Moore to an aggregate of seventy-two years in the Indiana Department of Correction ("DOC"). Moore now appeals and raises one issue for our review, namely whether the evidence is sufficient to support his conviction for Level 1 felony child molesting. Concluding the evidence is sufficient to support his conviction, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the verdict are as follows. Moore is the step-grandfather of V.G. Sometime in December 2014, when V.G. was eight years old, V.G.'s family, including Moore, her parents, siblings, and some extended family, got together to celebrate Christmas. After the gathering, V.G., Moore, and several other family members went bowling in Elkhart. V.G.'s parents did not attend. At the end of the night, Moore drove V.G. to her home in Warsaw. During the drive, V.G. fell asleep and Moore reached over with his right hand, unbuttoned V.G.'s pants, and fondled her vagina with his fingers. Later, when V.G. woke up in the truck, her pants were unbuttoned and unzipped, her underwear was "scrunched down in her pants[,]" and her seatbelt was off. Transcript, Volume 2 at 203. She also experienced extreme pain in her vagina. She later rated her pain level, on a scale of one through ten, as an eight or nine, and characterized the pain as feeling "like a bone was poking through

something." *Id.,* Vol. 3 at 89. V.G. did not say anything to Moore; however, she believed he told her "that [her] pants looked a little bit too tight, like around the waist, or [her] seatbelt was too tight[.]" *Id.* at 91. When they left the bowling alley, V.G. was wearing her seatbelt, her pants were zipped, and she did not have any vaginal pain. Moore dropped V.G. off at home.

[3] Sometime in 2016 or 2017, V.G.'s family, including her parents and siblings, got together at Moore's mother's home. Moore was also at the gathering. After dinner, V.G.'s stepfather and mother observed Moore look at V.G.'s buttocks in an inappropriate manner. V.G.'s parents went to the basement to have a cigarette and discuss what they had just seen. Shortly thereafter, Moore's mother, V.G.'s great-grandmother, also joined. Moore stayed upstairs with V.G. and her siblings. Moore was seated in a chair and V.G. laid on the couch next to the chair. V.G.'s siblings were playing in a nearby room. Moore tried to "tickle" V.G. but "put his hand under [her] pants but not . . . under [her] underwear" and rubbed her vagina for no more than twenty seconds. *Id.* at 93, 99. Moore stopped because the adults returned from the basement.

[4] On January 1, 2019, V.G.'s parents discovered V.G. was using Instagram despite not being allowed to have or use social media. V.G.'s parents discovered messages she had sent via Instagram to a friend and confronted her, which ultimately led to V.G. disclosing the abuse. V.G.'s father later contacted the police.

[5] On January 9, V.G. met with a forensic interviewer and disclosed the sexual abuse. The following day, V.G. underwent a physical examination conducted by forensic nurses Nancy Grant and Steve Taft. In examining V.G., Grant observed "there was a notch missing out of the 6 o'clock position of her hymen." *Id.,* Vol. 2 at 172. This meant that "the rim of the hymen was missing a small section[,]" which is "indicative of penetration." *Id.* Taft also observed the abnormal findings, stating that V.G. "had some missing hymen tissue at about 6 o'clock, [which is] significant [because t]here should not be any type of missing pieces or . . . healed areas" in the posterior part of the hymen. *Id.* at 208. Taft opined that the finding was indicative of penetration. Although Grant and Taft both indicated that it would be difficult or nearly impossible to determine when the injury occurred, Taft believed the type of injury he observed was consistent with an injury from a finger or toy. *Id.* at 216.

[6] Detectives Josh Havens and Mario Mora of the Goshen Police Department interviewed Moore on January 16. They read Moore his *Miranda* rights and Moore agreed to speak with them. The interview was recorded. During the interview, Moore initially denied touching V.G. inappropriately. However, Moore later admitted to unfastening V.G.'s seatbelt, unbuttoning her pants, and fondling her for five to ten minutes while driving her home from the bowling alley in 2014. At one point, Moore told detectives that he believed V.G. was sleeping the entire time "and that he had got a mulligan. And he knew it wouldn't happen again." *Id.,* Vol. 3 at 14. Detective Mora also had a conversation with Moore about how far Moore's fingers went into V.G.'s

vagina.  Moore admitted to putting his fingers inside the lips of V.G.'s vagina and "stated that they had broke [sic] the plane of the lips of her vagina." *Id.* at 19, 131.  Moore also admitted to touching V.G. at his mother's house.  Moore told detectives he had been tickling V.G. and "at one point she had pushed his hand down and his hand could have possibly touched her." *Id.* at 13.  After the interview, Moore was arrested.

[7]     On January 22, the State charged Moore with child molesting, a Level 1 felony; child molesting, a Level 4 felony; and alleged he was a repeat sexual offender. A jury trial was held from February 10 to 12, 2020.  The video recording of Moore's interview was admitted into evidence and portions thereof were published to the jury.  The jury found Moore guilty of both counts of child molesting and Moore admitted to being a repeat sexual offender.  The trial court sentenced Moore to consecutive terms of fifty years for his Level 1 felony conviction and twelve years for his Level 4 conviction, enhanced by ten years for being a repeat sexual offender.  The trial court ordered Moore's sentences to be served in the DOC.  Moore now appeals.

## Discussion and Decision

### I.  Standard of Review

[8]     When reviewing the sufficiency of the evidence required to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses.  *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).  Instead, we consider only the evidence supporting the verdict and any reasonable inferences

that can be drawn therefrom. *Morris v. State*, 114 N.E.3d 531, 535 (Ind. Ct. App. 2018), *trans. denied*. We consider conflicting evidence most favorably to the verdict. *Silvers v. State*, 114 N.E.3d 931, 936 (Ind. Ct. App. 2018). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). The evidence need not overcome every reasonable hypothesis of innocence; it is sufficient if an inference may reasonably be drawn from the evidence to support the verdict. *Silvers*, 114 N.E.3d at 936.

## II. Sufficiency of the Evidence

Moore challenges his conviction for child molesting as a Level 1 felony. Moore's only claim on appeal is that the evidence is insufficient to show that he performed "other sexual conduct" with V.G. Specifically, he claims the evidence is insufficient for the following reasons: "V.G. could not recall a single detail of the touching as she was asleep[; t]he tear in V.G.'s hymen discovered some four years after the alleged incident could have been caused by any number of things not related to [his] conduct[;] and finally even though [he] admitted to touching V.G., he adamantly denied any penetration occurred." Appellant's Brief at 9. We disagree.

To prove Moore committed child molesting as a Level 1 felony, the State was required to show that Moore, being at least twenty-one years old, knowingly or intentionally performed or submitted to other sexual conduct with V.G., who

was under the age of fourteen. Ind. Code § 35-42-4-3(a)(1). "Other sexual conduct" is defined as an act involving "the penetration of the sex organ . . . of a person by an object." Ind. Code § 35-31.5-2-221.5(2). Our supreme court has held that "proof of the slightest penetration of the sex organ, including penetration of the external genitalia, is sufficient to demonstrate a person performed other sexual [ ]conduct with a child." *Boggs v. State,* 104 N.E.3d 1287, 1289 (Ind. 2018). "[P]enetration of the vaginal canal is not required to prove Level 1 felony child molesting as charged here. The State need only have proven penetration of [the victim's] external genitalia." *Hale v. State*, 128 N.E.3d 456, 463 (Ind. Ct. App. 2019) (internal citation omitted), *trans. denied*. It is "physically impossible for [a defendant] to touch any part of [a victim's] vagina without having first penetrated her vulva, or external genitalia." *Id.* (footnote omitted).

[11]     Here, V.G. testified that Moore drove her home from the bowling alley in 2014. She fell asleep in the truck and when she woke up her pants were unbuttoned and unzipped, her underwear was crumpled down into her pants, her seatbelt was off, and she experienced extreme pain in her vagina. Years later, forensic nurses performed a physical examination on V.G. Both nurses testified that V.G. was missing a small portion of hymen tissue. Neither nurse could speculate as to when the injury occurred, but they both testified that V.G.'s injury was indicative of penetration. Although Moore denied penetrating V.G.'s vagina, he acknowledges that he admitted to "penetrating the outer crack" of her vagina. Appellant's Br. at 8. He also admitted to detectives that

he put his fingers inside the lips of her vagina and admitted to fondling her for five to ten minutes. As stated above, the State need not prove that Moore penetrated V.G.'s vaginal canal; proof that he penetrated her external genitalia is sufficient. *Hale*, 128 N.E.3d at 463. In essence, Moore's argument is a request for this court to reweigh the evidence and reassess the credibility of the witnesses in his favor, which we cannot do. *Drane*, 867 N.E.2d at 146. We conclude there is sufficient evidence from which the jury could conclude Moore performed "other sexual conduct" with V.G.

# Conclusion

[12] We conclude there is sufficient evidence from which a reasonable jury could determine that Moore committed child molesting, a Level 1 felony. Accordingly, we affirm his conviction.

[13] Affirmed.

Bailey, J., and Tavitas, J., concur.